Our fourth case of the day is Brunett against Convergent Outsourcing. Mr. Vlahakis. Good morning. May it please the court, my name is James Vlahakis and I represent the plaintiff on this appeal. There are two issues that I believe the district court erred on and the first issue with this court's indulgence will be the counsel. Before we get to those issues I have a question about subject matter jurisdiction. I don't see any allegation of concrete injury. There's no claim that the statements harmed the plaintiff's credit rating, that they paid anything they didn't owe, and so on. And so given the Supreme Court's decision in Spokeo and this circuit's decision in Kosyllis, I wonder how there could be standing. Thank you, Your Honor. I anticipated getting a question from you on this. So why didn't your brief address it? It's the responsibility of counsel to discuss jurisdiction in every case and that didn't happen. Didn't happen for your side, the district judge didn't mention it, but it's an obligation and so here we are. Yes, I understand your point, Your Honor. I think we did address it to the extent that we commented on how the IRS language is the type of language that instills fear in people more so than the typical issue people may have with... Is there, no, no, look, is there any concrete harm? Did something happen like the payment of a debt not owed? You instill fear and you get them to pay what they don't owe. I don't see any such allegation. The time and effort my client spent in attempting to understand what her legal rights were... No, then Spokeo was wrongly decided. That very same argument could be and actually was made in Spokeo. It can't work. My client was offered to make a payment that she could only afford when she was on disability, which would have been a $5 a month payment, which was provoked by this letter, so that caused her to make a decision as to how to use her limited finances. Did she actually pay anything? No, she did not, Your Honor. Do you have any way of reconciling standing in this case with our holding in Casillas? Yes, Your Honor, for this basis, and I would, if I could, I'm turning to the class certification issue. No, I don't want you to turn to class certification. I want you to address jurisdiction. Yes, the claim that somebody would have to be paying, would have to incur a 1099-C liability when that in fact is not the case, is a materially false statement in violation of the FDCPA, which is different than Casillas. Spokeo and Casillas hold that a false statement differs from injury. There has to be injury. The false statement is just a claim that there was a violation of the statute. What I'm, what worries me is where's the where there was none because they're a disclosure that's required by the FDCPA was not provided by that letter. Here, it's different that the debt collector is including language that is completely unnecessary under the factual scenario, which is then creating a false and misleading statement. They're going beyond what the law allows. That just sounds like a reassertion of the claim that there's a antecedent to any proof of violation of the statute. I hope you see my problem. I do, I do. You can't say there was a violation of the statute, therefore I don't have to show injury. The injury is to, if the point is this, Your Honor, that if my client had paid this debt because of the 1099-C language. If she had, there might be injury, but it's agreed that she didn't. The, what I'm trying to reconcile with that is the fact that there were other class members that did pay this debt and that under. Then they might be the appropriate representatives of the class, but we have to determine whether there was standing by the asserted class representative, not by somebody else in a lawsuit filed by somebody who wasn't injured. And there lies the issue that I was going to mention with the Keele versus Wexler case. The court has said, has held that a plaintiff does not have to suffer the exact same injury as the people that they seek to represent. Where, in a debt collection scenario, Keele versus Wexler argued that she could represent people who had paid the debt because she had not paid the debt herself. Do you have a case in either the Supreme Court or the can bring a lawsuit on behalf of a class, some members of which arguably have been. Yes, that would be Keele. That's K E E L E. And I believe it's Wexler. I can pull up the exact site in a second off my brief. In that case, the court held that was proper for the plaintiff to represent people who hadn't paid the debt like herself and people who actually had paid the debt, where the debt collector argued that I'm struggling. I'm struggling with the sense that my question is not being understood. I'm not asking whether to certify a class. Everybody has to have suffered the identical injury. I'm asking whether it is possible to represent a class if you have not clearly. I do disagree, though, that she hasn't suffered the injury based upon that false material misstatement. Mr. Wahakis, let me let me ask the question from a slightly different perspective. It's getting at the same issue. Okay. And maybe coming at it that way, you'll have you'll have something to offer on it. Maybe not. Okay. I focused on the same question coming into oral argument. In one way, I focused on it was by looking at your client's deposition testimony. And in her deposition testimony, she does two things that at least came across to me. One is that she she definitely expresses confusion about what the IRS notice meant. She clearly didn't understand it. Okay. That comes from pages 46, 47, and 48 of her test of her deposition testimony. The other thing that she does is when asked about harm questions akin to what Judge Easterbrook is asking for purposes of Article 3 standing. What she says is she felt intimidated. Is there any is does does feeling intimidated rise to the level or is it adequate to satisfy the injury components of Article 3 standing? I believe it does, Your Honor, in light of the this court's acknowledgment in the Heredia case versus capital management. Heredia did not discuss standing. I understand that, Your Honor. It did discuss though the fear. Casillas did. And Heredia didn't mention Casillas. Right? There's always a problem when the litigants, as in this case, pay no attention to standing. That the court may issue an opinion that likewise pays no attention to standing. We have to go by the opinions that do pay attention to standing. Well, in turning to Casillas, that was a G-A violation relative to telling somebody what their statutory rights might be. And that wasn't included in the letter. That plaintiff said that had no intention of invoking their rights to dispute or seek validation of the debt. Here, by invoking the IRS language that was noted in Heredia, that put the fear into my client and the misunderstanding of why this would even apply to her. And yes, it is difficult enough. Couldn't Spokeo have said exactly the same thing? I misunderstood what was communicated to me. I think it's unambiguous that the justices view that as inadequate. I think the difficulty with Spokeo is that it dealt with the Fair Credit Reporting Act case and not the Fair Debt Collection Practice Act, which in section 1692A identifies the purpose of the act to protect people from embarrassment, fear, marital discord, and whatnot. And to protect good debt collectors who comply with the law from losing out on business opportunities to other debt collectors that may push beyond them. But you're now coming back to the argument that if the defendant violated the law, then there can be a suit without any other proof of injury. And it seems unambiguous that Spokeo rejected that, as did the Supreme Court last spring in Fole against U.S. Bank. In the context of what those statutes provide relief for, I would agree with that. But here, she did identify the fear that she had. She looked up my firm to find out what her rights were. She testified to that. Oh, look, the time has expired. But if you're now arguing that every plaintiff who engages, who's concerned enough to engage a lawyer to file a lawsuit, has standing, then the standing doctrine has been completely abolished. Because all of the suits where the Supreme Court found no standing were filed by lawyers after plaintiffs were concerned enough to consult counsel. If I may, I know my time is up. I'd like to just address that. Your time is up. I'll give you two minutes for rebuttal. Thank you very much, Your Honor. Mr. Foster. Good morning, Your Honors. Thank you very much. I will not summarize the entire brief that we filed. The main issue that I want to present to the Court on oral argument is that the primary basis that the District Court found and ruled in summary judgment was the plaintiff's reluctance and failure to present extrinsic evidence regarding the letter. And that was the sound basis. Mr. Foster, I'm sure you can tell that that's not the Court's principal interest. We need to figure out whether there is a justiciable lawsuit before us. And like Mr. Wahakis, your brief doesn't engage that question. We need to have it discussed. Yes, Your Honor. Your Honor, I apologize for that. We did not raise that earlier. I would agree with your position that there probably isn't, there isn't standing for, there was no concrete harm here. And if I may, in terms of apologizing why we didn't raise it is in part because we felt that there wasn't, there wasn't a, there wasn't good precedent for us to make it clear to the District Court that this was a frivolous claim, that there was no injury. You don't think the Supreme Court decision in Spokale and our decision in Koselos offer a reasoned basis for contesting standing in this case? It does, Your Honor. It does, Your Honor. And it was, it was our miscalculation regarding the clarity of that and whether or not they would be persuasive to a District Court judge on a motion to dismiss in this case. We focused on the merits and going through it. That, that, that is a, that is a mistake on our part and we apologize. Let's go through what was articulated by the plaintiff. How about the statement, I was confused by this letter. Is that a concrete injury? No, it's not, Your Honor. Why? Because it's, it's, it amounts to a emotional hyperbole and it's not based upon anything concrete. I understand there may be a, a contention of thought that feelings are real things and that, that, that ought to be, but that's not actually something that's concrete upon which to base a claim. So Your Honor, hold on a minute here. Hold on. She, she, when you look at her deposition testimony, I think at a minimum you can say she absolutely did not understand the 1099C notice. She just did not understand what the words meant. To the extent that she did have an understanding, it was most confused. I, I think that's the You know, we, we know from all the precedent Judge Easterbrook's talking about. Injury has to be concrete. It has to be particularized. It has to be actual, imminent. Are those standards satisfied? No, I don't, I don't believe so, Your Honor. My recollection of, of the, of her deposition testimony was that she understood that the particular statement at hand did not apply to her because she understood the letter and her contention was that she didn't understand why the, that statement was ever part of the letter. Presumably she didn't bother to read the rest of the letter that invited her to, to, to contact the, contact her client to see what other terms can be worked out on the account, which is an invitation for if someone cannot take advantage of a 50% discount, if they need a 60, 70% discount, there's an invitation in the letter to have that, have that discussion. So her simply not understanding the letter, I think this court has hold that, you know, idiosyncratic, bizarre interpretations of letters, they're not, they're not the basis for a, for a, for a claim. I was going to say, how can one call confusion an idiosyncratic interpretation? Most people looking at even the plainest provision of the Internal Revenue Code itself feel confusion. Learned Hand once said that when he looked at the code, the words just danced before his eyes and didn't convey any meaning. So you have somebody who's a non-lawyer who looks at some legal language and says, I'm confused. Are you denying that that's real? I know, Your Honor, that certainly confusion can, can arise. The question is, is it, is it, is it reasonable confusion based upon the language that's there or is it confusion about the, the law? And so understandably, the Internal Revenue Service Code can be quite confusing in terms of... No, the legal, the legal question would have to be whether confusion, I think, on, given the deposition, we have to assume that the plaintiff can show that she was confused. The legal question is whether confusion would be a concrete injury. Is that a question that the Supreme Court has addressed one way or the other? In Spokeo, it has, Your Honor. You think Spokeo addressed confusion as an injury? Well, we'll, we'll check that, but I don't recall Casillas addressing that particularly. No, I, I don't, I don't either, Your Honor. I apologize. Yeah. I mean, you can, you, you all can take a look at the, well, it's up to judges. You can take a look at the deposition testimony, but I mean, it, it's as plain as day. She didn't understand that notice. So then it's the, the legal question is, do you need more? She had no idea what it meant. And the reason is because, I think, if I read 46, 47, 48, is because the offer of compromise was in the, what, 550 bucks or something. It's under 600, whatever the dollar amount was. And she's thinking, hold on, they're offering to settle this for under 600 bucks, but yet there's this notice about IRS reporting that's not triggered until this gets to 600. So I, I don't know what this means. It, they're offering something under, but they're talking about reporting something to the IRS. I, you know, I, I mean, I have some questions. I understand that your honor, the importance of the language in the statement is that it's the word of use of the word may. And as this court is previously held in the Dunbar case that will may does not mean will in this case, the, this is a statement that is literally true and under the objective unsophisticated consumer test is it's not misleading. And so therefore the plaintiff getting back to the summary judgment didn't provide the extrinsic evidence needed under this circuits jurisdiction to, to withstand the motion for summary judgment, because while arguments could be made, whether, was there confusion or not in this particular case, the extrinsic evidence wasn't presented because our position would be that the letters clearly not misleading plaintiff's position is that the letter clearly is misleading. Middle ground is that it could be. And if it's in the middle category, extrinsic evidence is needed. No extrinsic evidence was given. We have a, we have a basis for some rejections, like the merits about whether it was misleading or not, rather than whether there was injury or not. Yes, your honor. I, I tried to, I'm sorry, if I have not addressed your question directly, mere confusion is, is not, is not sufficient for the concrete concrete injury because it's, it, the only evidence of that is going to be self-serving testimony about, well, I was confused, So what? Plaintiffs engage in self-serving testimony all the time. I was run down on the street and suffered a broken leg is self-serving testimony. It's perfectly fine to show injury. To allege injury, absolutely, your honor. And, and our point is that, while my focus has been on the summary judgment of the moment to put up or shut up, and the plaintiff didn't do that, I understand the court's interest in trying to determine, was there enough here alleged to, to, to actual state an actionable claim? And I would agree with your, with the position that there wasn't enough here for a concrete injury, but I apologize. We did not brief that issue on a motion to dismiss in terms of trying to, trying to develop that, that line of attack because we focused on the merits of the case. Well, we'll desist and give you a minute and a half to discuss what's left of the merits. Thank you. Thank you, your honor. And then Mr. Wahakis will have his two minutes to discuss the merits. Can I ask you a merits question, Mr. Foster? Yes, your honor. My merits question is this. How, how, if you have a debtor whose total debt is under $600, how is this not misleading on its face? It can never apply. Because it's, it's not misleading on its face because you have to read the letter as a whole, and the invitation on the letter invites the, the debtor to contact to work out other arrangements, which is invitation for, for a debt relief that's larger. It also is the case that this is a case that fits into why it's not misleading. It fits into the scenario handled by the, in the Roan versus Allegiance One case, Southern District of Indiana, 2015, where you have the amount of the debt piece information. And then this particular language, it puts all the information into the hands of the unsophisticated consumer who has reasonable understanding. I don't understand why, if I, if I owe PayPal $500, and I get a note like the one that came through here with the IRS notice, don't you think I'm going to say, why in the world is the 1099C notice there? It, it seems N-A, because I owe 500. And so I'm going to be, I'm going to be confused. Maybe the, maybe the hope is that the confusion engenders a bit of pressure to pay this, you know, out of concern that, hey, if I pay it, there's no way the IRS is after me. I just can't, I don't understand for the life of me why it's on a notice where the total debt owed is under $600. My time has expired that I'd be happy to. As long as we're asking questions, you can keep giving answers. Thank you, Your Honor. Thank you. In this particular case, the debt was, the total amount of debt was over $1,000. And so, so we don't have this. Dr. Scudder's question did not concern Ms. Brunette. It concerned, and it concerns me too, some members of the class whose total debt was under $600 nonetheless got a notice that could never conceivably have applied to them. Isn't that a problem? It, it, if you, if you miss, if you interpret the word may to mean will, then yes, it could be a problem, but the, but the conditional language is not triggered. I'm sorry. I'm sorry. I couldn't hear you. Okay. Thank you very much. Mr. Bohacus, you have your two minutes. Thank you, Your Honor. I believe that the having, we have to look at what the provision of the FDTPA is being alleged to have the violation. The Casillas court dealt with G violation. As this court has held before in Pantoja under an E violation, something can be misleading. And while standing wasn't discussed particularly in that case, I think the problem we have is one can make that argument that an informational injury is not enough, but where somebody puts language on the letter that flat out doesn't belong there. And debt collectors, in this case could have excluded this language from debts of less than 1200 and clearly less than 600. It has an impact on people, which is what I don't think the Supreme Court has directly spoken on a Spokio case for the purpose of the FDCPA to protect consumers from confusion, from fear, from all of those things. And here, I believe one point I was trying to convey is that this isn't a lawyer manufactured lawsuit where we look at, oh, what does zero mean or what does NA mean on itemization? This is a person who was opposed very well by Mr. Foster. We know each other from many years ago. He asked her lots of questions and she really clearly spoke about what her confusion was. It wasn't an issue where she didn't read the letter. There's old cases that talk about a consumer doesn't have to read the letter. She did. It impacted her and it clearly impacted the hundreds of class members that did pay. If the court would like some further briefing on this, I could. I know that the Third Circuit has held that this similar letter in Schultz versus Midland violated the FDCPA and a class was certified and standing was found to exist there, but standing was only found at the district court level, but there was an analysis of that exact 1099C issue in Schultz v. Midland. I can give the site to the court if you'd like to see that district court opinion. Okay, thank you very much, counsel. The case will be taken under advisement.